UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET ANN GRAMES,

    Plaintiff,

v.                                          Case No. 1:16-cv-1400
                                                Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff alleged a disability onset date of July 19, 2013. PageID.321. She identified her disabling conditions as: post-traumatic stress disorder (PTSD); degenerative disc disease; severe back pain; lumbar spine impairment; anxiety; depression; right should impairment; and disassociative disorder. PageID.310. Prior to applying for DIB and SSI, plaintiff earned a GED and had past employment as a clerk/cashier, factory worker, and home health aide. PageID.312. Administrative law judge (ALJ) Kleber reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 22, 2016. PageID.50-70.

In reaching her determination, ALJ Kleber noted that plaintiff filed applications for disability benefits in the past, with her most recent filing on September 6, 2011. PageID.50. This filing resulted in ALJ Lyman's decision denying benefits on July 18, 2013. *Id*. ALJ Kleber

1

addressed the effect of this prior decision under Acquiescence Rulings 98-3(6) and 98-4(6), concluding that

> I find new and material evidence concerning Ms. Grames' residual functional capacity and therefore, am not bound by the prior decision dated July 18, 2013 (ClA). I find that the residual functional capacity requires modification due to additional severe impairments. However, I find no new and material evidence concerning Ms. Grames' past relevant work and therefore, am bound by the prior decision as to those findings.

PageID.50-51. ALJ Kleber's July 22, 2016 decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, ALJ Kleber found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 19, 2013, and met the insured status requirements of the Social Security Act through December 31, 2016. PageID.53. At the second step, the ALJ found that plaintiff had the following severe impairments:

> As found by Judge Lyman, Ms. Grames has the severe impairments of degenerative disc disease and obesity. She now has the additional severe impairments of major depression, personality disorder and anxiety disorder.

*Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.55.

ALJ Kleber decided at the fourth step that:

> Ms. Grames has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except specifically, she is able to lift or carry up to 20 pounds occasionally or 10 pounds frequently. Ms. Grames can stand or walk for up to six hours of an eight-hour workday or sit for up to six hours of an eight-hour workday. Ms. Grames can occasionally climb stairs or ramps, but cannot climb ladders or scaffolds. Ms. Grames can occasionally balance on a moving platform, stoop, crawl, or kneel. She can frequently reach forward or overhead with either upper extremity. The work she can perform allows her to miss

work one day per month. Ms. Grames can perform simple tasks, defined as those which can be learned after a short demonstration or within 30 days. The work Ms. Grames can perform is low stress, defined as work that requires no more than occasional decision making. The work is routine and predictable, defined as performing the same tasks in the same place, each day. Due to a worsening in condition due to anxiety beginning in 2015, Ms. Grames has the following additional limitations: She is able to focus sufficiently to perform the tasks involved in her assigned work for 90% of the day, not counting regularly scheduled breaks. Ms. Grames can have no interaction with the public, rare interaction with coworkers, and occasional interaction with supervisors.

PageID.58.

The ALJ also found that plaintiff is capable of performing her past relevant work as a cashier and retail clerk, because "[t]his work does not require the performance of work-related activities precluded by Ms. Grames' residual functional capacity." PageID.68.

Although ALJ Kleber found that plaintiff could perform her past relevant work, she proceeded to the fifth step and determined that plaintiff could perform a significant number of unskilled jobs at the light medium exertional level in the national economy. PageID.69-70. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations such as electrical accessories assembler (42,000 jobs nationally), hand packager/bagger (134,000 jobs nationally), and inspector/hand packager (48,600 jobs nationally). PageID.69-70. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 19, 2013 (the alleged onset date) through July 22, 2016 (the date of the decision). PageID.70.

**III. DISCUSSION**

Plaintiff set forth two issues on appeal:

**A. The ALJ failed to properly weigh the medical opinion evidence of plaintiff's treating psychiatrist, Dale D'Mello, M.D.**

5

Plaintiff contends that the ALJ improperly gave little weight to Dr. D'Mello's opinions. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2) ("[w]e will always

give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ performed an extensive review of Dr. D'Mello's opinions expressed in two documents.[1] With respect to the doctor's first opinion, the ALJ stated as follows:

> On March 15, 2015, Dr. Dmello [sic] opined that Ms. Grames experienced episodes of decompensation or deterioration in a work or work-like setting, which caused her to withdraw from the situation or experience an exacerbation of symptoms (C12F/2). When asked to explain his reasoning, Dr. Dmello noted "unable to work." He found that Ms. Grames had moderate to moderate-to-marked limitations in the areas of understanding and memory, concentration and persistence, social interactions, and adaptations except for none-to-mild limitations in being aware of hazards and taking appropriate precautions and marked limitations in traveling to unfamiliar places or using public transportation and performing activities within a schedule and consistently being punctual. None was defined as symptoms that did not interfere with ability; mild was defined as symptoms that rarely interfered with ability; moderate was defined as symptoms that occasionally interfered with ability; moderate-to-marked was defined a symptoms that frequently interfered with ability; and marked was defined as symptoms that constantly interfered with ability. Dr. Dmello further opined that Ms. Grames was likely to be absent from work as a result of her impairments or treatment more than three times per month (C12F/5). Dr. Dmello assessed Ms. Grames a GAF score of 45 (Cl2F/l). According to the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-R) (4th Ed. Rev. 1994) at page 32, a GAF between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. However, the next month Dr. Dmello found that Ms. Grames had a GAF score of 60 (Cl0F/11-12, 14; C17F/3). A GAF between 51 and 60 indicates moderate symptoms or a moderate impairment in social, occupational, or school functioning. Dr. Dmello provided no explanation as to why Ms. Grames decompensates or should be off work more than three times per month. Additionally, the medical evidence does not support such severe restrictions. From May 2014 through December 2015 (when he stopped seeing Ms. Grames), Dr. Dmello's treatment notes repeatedly stated that she was pleasant and polite, she was neatly and casually attired, her affect was broad, her speech was clear and coherent without pressure and flight of ideas, she denied auditory hallucinations, she did not express feelings of hopelessness or thoughts of suicide, she was oriented times three, she displayed adequate insight and unimpaired judgment, and she showed no memory, knowledge, concentration, or intellectual deficits (C4F/30, 32, 34-35; Cl0F/l, 9, 11-12, 14; C17F/3). On April 24, 2015, Ms. Grames reported an improvement in mood, energy, sleep, appetite, pleasure, and focus (Cl0F/11). Her mood was euthymic, and she had no psychomotor retardation. On July 17, 2015, Ms. Grames remarked that

---
[1] The Court notes that the ALJ referred to the doctor as "Dr. Dmello".

7

she had a modest improvement in mood, sleep, appetite, energy, pleasure, and anxiety (Cl0F/12). On September 25, 2015, Ms. Grames reported continued improvement in mood, sleep, appetite, energy, pleasure, and anxiety with less pronounced panic attacks (Cl0F/14). Her speech was logical and goal directed. On December 4, 2015, Ms. Grames had a brighter mood, less intense panic attacks, and an improvement in her core depressive symptoms (insomnia, energy, concentration deficits, and feelings of hopelessness) (C17F/3). Her speech was logical and goal directed. Moreover, the final responsibility for deciding the issue of residual functional capacity and the ultimate issue of disability is reserved to the Commissioner (20 C.F.R. § 404.1527(e) and §416.927(e) and Social Security Ruling 96-2p). A statement by a medical source that Ms. Grames is "disabled" or "unable to work" does not mean that she will be determined to be disabled as that term is defined in the Act (20 C.F.R. §§404.1527(e)(l) and §416.927(e)(l) and Social Security Ruling 96-5p). Therefore, I give this opinion little weight.

PageID.65-66.

The ALJ evaluated Dr. D'Mello's second opinion (provided about 13 months later) as follows:

On April 25, 2016, Dr. Dmello opined that due to the severity of her psychiatric impairments, Ms. Grames was markedly limited in her ability to perform activities within a schedule, travel to unfamiliar places, and use public transportation (Cl9F/l). He found that Ms. Grames was moderate-to-markedly limited in the following: carrying out detailed instructions; working in coordination with or near others without being distracted by them; completing a workday without interruptions from psychological symptoms; interacting appropriately with the public; getting along with coworkers without distracting them; maintaining socially appropriate behavior; and setting realistic goals. Dr. Dmello further opined that Ms. Grames experienced episodes of decompensation in work or work-like setting, which caused her to withdraw and experience an exacerbation of symptoms, so she was incapable of work. He found that if Ms. Grames was place [sic] in a full-time competitive job, she would likely be absent from work more than three times per month as a result of her severe impairments. He found that his opinion formed on March 15, 2015 were accurate to date. Dr. Dmello provided no explanation as to why Ms. Grames decompensates or should be off work more than three times per month. Additionally, the medical evidence does not support such severe restrictions. From May 2014 through December 2015 (when he stopped seeing Ms. Grames), Dr. Dmello's treatment notes repeatedly stated that she was pleasant and polite, she was neatly and casually attired, her affect was broad, her speech was clear and coherent without pressure and flight of ideas, she denied auditory hallucinations, she did not express feelings of hopelessness or thoughts of suicide, she was oriented times three, she displayed adequate insight and unimpaired judgment, and she showed no memory, knowledge, concentration, or intellectual deficits (C4F/30, 32, 34-35; Cl0F/l, 9, 11-12, 14; C17F/3). On April 24, 2015, Ms.

8

> Grames reported an improvement in mood, energy, sleep, appetite, pleasure, and focus (Cl0F/11 ). Her mood was euthymic, and she had no psychomotor retardation. On July 17, 2015, Ms. Grames remarked that she had a modest improvement in mood, sleep, appetite, energy, pleasure, and anxiety (C10F/12). On September 25, 2015, Ms. Grames reported continued improvement in mood, sleep, appetite, energy, pleasure, and anxiety with less pronounced panic attacks (Cl0F/14). Her speech was logical and goal directed. On December 4, 2015, Ms. Grames had a brighter mood, less intense panic attacks, and an improvement in her core depressive symptoms (insomnia, energy, concentration deficits, and feelings of hopelessness) (C17F/3). Her speech was logical and goal directed. Moreover, the final responsibility for deciding the issue of residual functional capacity and the ultimate issue of disability is reserved to the Commissioner (20 C.F.R. § 404.1527(e) and § 416.927(e) and Social Security Ruling 96-2p). A statement by a medical source that Ms. Grames is "disabled" or "unable to work" does not mean that she will be determined to be disabled as that term is defined in the Act (20 C.F.R. §§ 404.1527(e)(l) and § 416.927(e)(l) [sic] and Social Security Ruling 96-5p ). Therefore, I give this opinion little weight.

PageID.66-67.

Upon reviewing the record, the Court concludes that the ALJ gave good reasons for the weight assigned the Dr. D'Mello's opinions. *See Wilson*, 378 F.3d at 545. Contrary to plaintiff's contention, the ALJ did not err by stating that "the final responsibility for deciding the issue of residual functional capacity and the ultimate issue of disability is reserved to the Commissioner." These are the ALJ's functions. "Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 578 (6th Cir. 2009). In addition, the ALJ is not bound by a physician's conclusion that a claimant is disabled or unable to work. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984).

Here, the ALJ could properly give Dr. D'Mello's opinions little weight. Dr. D'Mello's March 2015 opinions were expressed in a check-mark format with no real explanations. The Sixth Circuit has "previously declined to give significant weight to rudimentary indications that lack an accompanying explanation", pointing out that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Hernandez v. Commissioner of Social Security*, 644 Fed. Appx. 468, 474 (6th Cir. 2016), quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993). As the ALJ noted, one of the few explanations to appear in the doctor's opinion was the legal conclusion that plaintiff was "unable to work." PageID.681. *See Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986) (a physician's statement such as that the claimant was not "capable of engaging in any substantial work activity" is a legal conclusion that is not binding on the Commissioner). Similarly, the doctor's April 25, 2016 letter states that the legal conclusion that plaintiff "is incapable of working." PageID.723.

Plaintiff also contends that ALJ improperly relied on the opinion of a non-examining psychologist whose review of the record on February 4, 2015 did not include all of plaintiff's medical records in this matter. Plaintiff appears to be referring to Mark Garner, Ph. D. The ALJ addressed Dr. Garner's opinions as follows:

> On February 4, 2015, a psychological consultant, Mark Garner, Ph.D., opined that Ms. Grames retained the ability to do one and two-step tasks on a sustained basis within her physical limitations (C3A/13; C4A/13). He found that she would do best in tasks that did not require frequent interactions with others. Dr. Garner further opined that Ms. Grames would have difficulty completing detailed tasks consistently due to having variation in concentration secondary to mental impairments (C3A/12; C4A/12). Although the State Agency psychological consultant at the initial level did not examine Ms. Grames, he provided specific reasons for his opinion about her residual functional capacity showing that the opinion was grounded in the evidence in the case record, including careful consideration of Ms. Grames' mental health treatment and Ms. Grames' allegations about her symptoms and limitations. I accord the above opinion great weight

> because the evidence received into the record, after the initial determination, did not provide any new or material information that would alter any findings about Ms. Grames' residual functional capacity (SSR 96-6p).

PageID.65. An ALJ can give significant weight to the opinion of a non-examining source who has not viewed the entire record, provided that the ALJ gives "some indication" that he "at least considered" that the source did not review the entire record. *Kepke v. Commissioner of Social Security*, 636 Fed. Appx. 625, 632 (6th Cir. 2016), quoting *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 409 (6th Cir. 2009). "In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke*, 636 Fed. Appx. at 632. Here, the ALJ subjected Dr. Garner's opinion to scrutiny. Accordingly, plaintiff's claim of error will be denied.

### B. The ALJ failed to properly evaluate plaintiff's testimony.

Next, plaintiff contends that the ALJ's credibility determination with respect to her mental impairments is not supported by substantial evidence. Plaintiff's Brief (ECF No. 9, PageID.836). In this regard, plaintiff claims that "the ALJ erred by selectively citing normal mental status findings while ignoring the abnormal findings that are consistent with a finding of disability" and "also erred by relying heavily on [plaintiff's] statements that she is able to perform some activities of daily living." *Id*.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high,

that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ noted plaintiff's claims regarding her mental impairments:

> Ms. Grames testified that she feels depressed and anxious and has panic attacks that scare her. She commented that she cannot stop her panic attacks and they are unpredictable. Ms. Grames remarked that her panic attacks range from less than one a week up to five times a week and last a few minutes at a time. Ms. Grames testified that she does not like to go anywhere, do anything, or go around crowds. Ms. Grames remarked that she can pay attention for a few minutes (C6E/11). She commented that she would rather be by herself and stay home. Ms. Grames remarked that her memory and concentration are poor due to her mind being cloudy.

PageID.59.

The Court finds no compelling reason to disturb the ALJ's credibility determination. *See Smith*, 307 F.3d at 379. The ALJ's credibility determination is supported by substantial evidence. The Court will not engage in a *de novo* review of the record to address plaintiff's contention that the ALJ ignored her abnormal mental findings in determining her credibility. *See Sullenger*, 255 Fed. Appx. at 995. In this regard, the ALJ did not ignore plaintiff's mental impairments, finding that while plaintiff "has received various forms of treatment for the allegedly disabling mental symptoms" and "that the treatment has been generally successful in controlling those symptoms when she followed prescribed treatment." PageID.63.

The ALJ did not err by concluding that plaintiff "described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." PageID.63. In this regard, the ALJ found that:

> Ms. Grames has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. On December 2, 2013 and March 7, 2016, Ms. Grames had friends (C4F/8; Cl8F/ l). On July 7, 2014, Ms. Grames reported doing some household packing and moving of boxes (C7F/13). On September 27, 2014, Ms. Grames was at a mud-bogging event (C7F/3). On January 22, 2015, Ms. Grames' husband reported that she helped care for her grandchildren when she could, drove, handled her finances, watched a little television, and visited with family and other people when they came to visit (ClE/6, 8-10). On March 6, 2015, Ms. Grames stated that she had been walking outdoors and journaling (C10F/9). On July 17, 2015, Ms. Grames enjoyed sitting on her deck and watching nature (C10F/12). On September 25, 2015, Ms. Grames stated that she enjoyed relaxing on her deck, watching nature, and walking (C10F/14). On December 4, 2015, Ms. Grames reported spending the holidays with her grandchildren (C17F/3). In regards to Ms. Grames' daily life, she commented that in a typical day, she wakes up, performs her personal care, eats, rests, naps, reads, watches movies, and watches some television (C6E/7, 10). She reported that she does not need reminders to perform her personal care or to take her medication (C6E/8). Ms. Grames commented that she makes simple meals, helps fold laundry, drives, goes grocery shopping with the help of her husband, and handles her finances (C6E/9-10). She remarked that she watches television and has conversations with others daily (C6E/10). Ms. Grames reported that she goes out about once a week. Ms. Grames testified that she goes to the grocery store with her sister or daughter. She commented that she lives with her daughter and her granddaughter, age one.

PageID.63-64.

"An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d 525, 532 (6th Cir. 1997). While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive

appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). Accordingly, plaintiff's claim of error will be denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 23, 2018          /s/ Ray Kent
                               United States Magistrate Judge